UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BALMES, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 2685 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ILLINOIS BELL TELEPHONE CO. d/b/a AT&T | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Robert Balmes and 140 other plaintiffs jointly sued their employer, Illinois Bell

Telephone Co., for shortchanging them on overtime pay in violation of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Doc. 21 at ¶ 8. Chief Judge Castillo severed the

plaintiffs' claims under Federal Rule of Civil Procedure 21, and Balmes's suit was reassigned to

the undersigned judge's calendar. Doc. 1-2; Doc. 21 at ¶ 9. Balmes then filed two amended

complaints, Docs. 7, 21, the second of which alleges that Illinois Bell, when calculating his

wages, routinely ignored time that he spent working before his official shifts and during lunch

breaks, and that in so doing it violated the FLSA, the Illinois Minimum Wage Law ("IMWL"),

820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820

ILCS 115/1 *et seq*. Doc. 21 at ¶¶ 15-53. Illinois Bell has moved to dismiss parts of the second

amended complaint under Rule 12(b)(6). Doc. 28. That motion is granted in part and denied in

part; Balmes's FLSA and IMWL claims based on pre-shift work and certain lunch break work

are dismissed with prejudice to the extent that work was performed before February 28, 2011,

but his IWPCA claims survive in their entirety.

**Background**

In deciding the motion to dismiss, the court assumes the truth of the second amended complaint's factual allegations, though not its legal conclusions. *See Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015); *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [second amended] complaint, documents that are critical to the [second amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Balmes's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015). The following facts are set forth as favorably to Balmes as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

Balmes worked as a Cable Splicer for Illinois Bell from June 15, 1999 until at least September 8, 2015, when he filed his second amended complaint. Doc. 21 at ¶¶ 16, 19. At all relevant times, his employment was governed by collective bargaining agreements negotiated between the International Brotherhood of Electrical Workers and Illinois Bell. *Id*. at ¶ 22; Doc. 28 at 4. The agreements required Illinois Bell to pay employees "at the overtime rate of one and one-half … times their basic hourly wage rate including applicable differentials" for all "[t]ime worked in excess of eight … hours in a day" and for all "[t]ime worked in excess of forty … hours in a week." Doc. 28-1 at 3, 27. Illinois Bell reiterated those overtime requirements in internal documents titled "AT&T Code of Business Conduct" and "Reporting Time Worked." Doc. 21 at ¶ 24; Doc. 28-1 at 38, 42. The Code of Business Conduct states that "all overtime hours worked by nonexempt employees must be paid regardless of whether they were approved,"

Doc. 28-1 at 40, and the Reporting Time Worked document states that "[n]on-exempt employees are eligible for overtime pay for all hours actually worked in excess of 40 hours in a workweek" and that "[n]on-exempt employees must be paid properly for all time worked," including "[p]reparatory work before the start of shift that is necessary for [their] job[s]" and "work during lunch periods," *id.* at 42.

Nevertheless, for years Illinois Bell required Balmes to perform work-related tasks without pay before his official shift and during lunch breaks. Doc. 21 at ¶¶ 33-38. Specifically, Balmes had to appear before his shift to check for supplies, review blueprints, discuss the day's jobs with other Cable Splicers and managers, finish timesheets, and perform other administrative tasks, *id.* at ¶ 34; and he typically had to work through lunch to secure job sites (which often featured open manholes on public streets), test equipment, and travel between job sites, *id.* at ¶¶ 37-38.

On January 17, 2011, other Illinois Bell employees sued Illinois Bell in *Blakes v. AT&T Corp.*, 11 C 336 (N.D. Ill.), alleging that the company violated the FLSA and the IMWL by requiring Cable Splicers to guard open manholes during lunch breaks, travel between job sites during lunch breaks, and complete timesheets after their shifts, all without pay. Doc. 21 at ¶¶ 6-7; Amended Complaint, *Blakes*, 11 C 336 (Doc. 11). Section 16(b) of the FLSA, 29 U.S.C. § 216(b), allows workers to bring claims as "collective actions," which operate much like class actions under Rule 23 except that "plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). The *Blakes* plaintiffs sought to bring the IMWL claims as a class action and the FLSA claims as a collective action. Complaint, *Blakes*,

11 C 336 (Doc. 1 at ¶ 3). Magistrate Judge Kim, who was hearing *Blakes*, conditionally certified three FLSA claims for collective treatment under § 216(b): (1) claims based on time spent guarding open manholes during lunch breaks; (2) claims based on time spent travelling between job sites during lunch breaks; and (3) claims based on time spent completing timesheets after shifts had ended. *See Blakes v. Ill. Bell Tel. Co.*, 2011 WL 2446598, at *3-4 (N.D. Ill. June 15, 2011). Those three claims will be called the "*Blakes* claims." The *Blakes* plaintiffs voluntarily withdrew their IMWL class claims on June 23, 2011, and Balmes opted into the FLSA collective action on July 28, 2011. Doc. 31 at 3.

On December 17, 2013, Magistrate Judge Kim decertified the collective action with respect to both lunch-break claims, but not the post-shift claim, and stayed his ruling until February 28, 2014. Doc. 21 at ¶ 7; *see Blakes v. Ill. Bell Tel. Co.*, 2013 WL 6662831, at *21 (N.D. Ill. Dec. 17, 2013). On the last day of the stay, Balmes and 140 other members of the *Blakes* collective filed a new complaint against Illinois Bell in *Tinoco v. Illinois Bell Telephone Co.*, 14 C 1456 (N.D. Ill.), as co-plaintiffs rather than as a collective action. Doc. 21 at ¶ 8; Doc. 28 at 3. *Tinoco* was assigned to Chief Judge Castillo, and the court issued summons on May 1, 2014. *See* Docket Sheet, *Tinoco*, 14 C 1456. Chief Judge Castillo ultimately held that a non-collective action suit joining the individual FLSA claims of 141 different plaintiffs would be too unruly, and so he severed the plaintiffs' claims, which the Clerk then distributed to judges throughout the District. *See Adkins v. Ill. Bell. Tel. Co.*, 2015 WL 1508496, at *9-10 (N.D. Ill. Mar. 24, 2015). Balmes's present suit, one of the severed *Tinoco* actions, was assigned to the undersigned judge's calendar. Doc. 2.

On September 8, 2015, Balmes filed a second amended complaint setting out his personal allegations against Illinois Bell. Doc. 21. The second amended complaint alleges that Illinois

Bell violated the FLSA and the IMWL by requiring Balmes to work more than 40 hours per week without paying him one and a half times his normal wage for the extra time, as those statutes require. *Id*. at ¶¶ 51-52; 29 U.S.C. § 207(a)(1); 820 ILCS 105/4a(1). He also alleges that Illinois Bell violated the IWPCA by breaking its promises of overtime pay. Doc. 21 at ¶ 53. He seeks to recover for all of his unpaid work dating back to July 28, 2008—exactly three years before he opted into the *Blakes* collective action. Doc. 31 at 6 n.1, 9 n.3, 10 n.4. (A section heading in Balmes's brief gives a different start date—"August 25, 2008"—but because that contradicts other assertions in his brief as well as basic arithmetic, the court assumes it was a mistake.) Balmes's suit includes not only the *Blakes* claims (guarding job sites and travelling during lunch, completing timesheets after shifts), but also allegations regarding unpaid time spent preparing for the day's jobs before shifts and testing equipment during lunch, which will be called the "non-*Blakes* claims." Doc. 21 at ¶¶ 32-38.

## Discussion

Illinois Bell moves to dismiss parts of Balmes's FLSA and IMWL claims as time-barred. Doc. 28 at 6-10 & n.3; Doc. 38 at 12 n.9. It also moves to dismiss Balmes's IWPCA claims on the grounds that they are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that the Code of Business Conduct and Reporting Time Worked documents are not "agreements" between Balmes and Illinois Bell that could give rise to IWPCA liability. Doc. 28 at 10-16.

## I. The FLSA Claims

Illinois Bell argues that Balmes's FLSA claim is partly time-barred. Doc. 28 at 6-10. Balmes argues that it is inappropriate to resolve timeliness questions on a Rule 12(b)(6) motion. Doc. 31 at 4-5. It is true that a Rule 12(c) motion for judgment on the pleadings may have been

a more appropriate vehicle for Illinois Bell's limitations argument. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012) ("Though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint."). Still, no rule categorically prohibits courts from ruling on arguments about timeliness on Rule 12(b)(6) motions. "[I]f it is plain from the complaint that the defense is indeed a bar to the suit[,] dismissal is proper *without further pleading*." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) (emphasis added); *see also Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) ("[A] motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.") (internal quotation marks omitted); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("[W]hen a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate."). That is the case here.

Balmes also contends that it is inappropriate for the court "to scrutinize [his] complaint by 'line item'"—that is, to dismiss a portion of a given claim as untimely while allowing the other portion to proceed. Doc. 31 at 5. But that is not even a remarkable practice, much less an inappropriate one. *See Chi. Bldg. Design*, 770 F.3d at 612 (holding that, because some infringing acts occurred within three years of when the suit was filed, it was inappropriate to dismiss the case outright, but noting that "[t]o the extent that [the plaintiff] seeks recovery for earlier infringing acts, the issue may have to be revisited on remand …"); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) (holding that the district court "erred to

the extent that it dismissed Lyons' claims that were premised upon acts that occurred within the applicable [limitations] periods"); *Global Cash Network, Inc. v. Worldplay, US, Inc.*, 2015 WL 8013464, at *2 (N.D. Ill. Dec. 7, 2015) ("That then means that Global Cash has no enforceable right of recovery for breach of contract as to any conduct predating June 12, 2009, and Count I is dismissed to that extent.") (footnote omitted); *Hill v. City of Chicago*, 2014 WL 1978407, at *8 (N.D. Ill. May 14, 2014) ("Count IX is dismissed with prejudice to the extent it is based on time-barred events but may proceed with respect to the issuance of the June 6, 2013 warrant.").

Illinois Bell has moved to dismiss Balmes's non-*Blakes* claims, insofar as they pertain to work he performed before February 28, 2011, on the ground that they are barred by the FLSA's three-year statute of limitations for willful violations, 29 U.S.C. § 255(a). Illinois Bell concedes that Balmes's second amended complaint relates back to the original complaint in *Tinoco* filed on February 28, 2014, and therefore that claims based on work that Balmes performed on or after February 28, 2011 are at least plausibly timely. Doc. 28 at 6. Illinois Bell also concedes for purposes of its motion that Balmes's *Blakes* claims are timely to the extent they are based on work performed on or after July 28, 2008, which is three years before he opted into the *Blakes* collective action on July 28, 2011. *Id.* at 7. But Illinois Bell contends that Balmes's non-*Blakes* claims are time-barred to the extent they are based on work performed before February 28, 2011, a date three years before the *Tinoco* suit was filed. *Id.* at 7-10.

Balmes counters that *Blakes* tolled the limitations period on his FLSA claims. Doc. 31 at 6. In support, he cites *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), which holds that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554 (footnote omitted); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352-53 (1983); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d

560, 561 (7th Cir. 2011). *American Pipe* tolling, Balmes insists, applies to collective actions under the FLSA as well as to class actions, which means that he can recover for unpaid work performed as early as July 28, 2008. Doc. 31 at 6-10.

Illinois Bell does not dispute that *American Pipe* tolling can apply to collective actions under the FLSA. Doc. 28 at 7. Illinois Bell also admits that *Blakes* tolled the statute of limitations for the *Blakes* claims—which, again, allege that Illinois Bell refused to pay workers for guarding job sites during lunch, for travelling between job sites during lunch, and for completing timesheets after shifts. *Ibid.* Illinois Bell and Balmes disagree, however, about whether *Blakes* tolled the statute of limitations on Balmes's FLSA claims based on his non-*Blakes* claims—namely, that he often worked before his shifts and that he routinely did work during lunch other than guarding job sites and driving from one job site to another. Doc. 28 at 7-10; Doc. 31 at 10.

Judges in this District handling severed *Tinoco* suits have split over whether *American Pipe* tolled the limitations periods for non-*Blakes* claims. Some decisions hold that the lunch-break claims were tolled while the pre-shift claims were not. *See, e.g.*, *Niemiec v. Ill. Bell Tel. Co.*, 2016 WL 521060, at *2-3 (N.D. Ill. Feb. 10, 2016); *Tennessen v. Ill. Bell Tel. Co.*, 2016 WL 521046, at *2-3 (N.D. Ill. Feb. 10, 2016); *Jones v. Ill. Bell Tel. Co.*, 2015 WL 9268418, at *2-3 (N.D. Ill. Dec. 21, 2015); *Alphonse v. Ill. Bell Tel. Co.*, 2015 WL 7251953, at *2 (N.D. Ill. Nov. 17, 2015); *Wiggins v. Ill. Bell Tel. Co.*, 2015 WL 6408122, at *4-6 (N.D. Ill. Oct. 22, 2015). Other decisions hold that none of the non-*Blakes* claims were tolled. *See Passi v. Ill. Bell Tel. Co.*, 2016 WL 193401, at *4 (N.D. Ill. Jan. 15, 2016); *Malkowski v. Ill. Bell Tel. Co.*, 2016 WL 193399, at *4 (N.D. Ill. Jan. 15, 2016); *Bowen v. Ill. Bell Tel. Co.*, 2016 WL 164415, at *4 (N.D.

Ill. Jan. 14, 2016).[*] The court agrees with the second set of decisions, and holds that none of Balmes's non-*Blakes* claims were tolled by *Blakes*. *See Scott v. Ill. Bell Tel. Co.*, 2016 WL 910507 (N.D. Ill. Mar 10, 2016).

As the Supreme Court explained in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975), *American Pipe* applies only when the earlier class suit "involve[s] exactly the same cause of action subsequently asserted." *Id*. at 467. And as the Seventh Circuit held in *In re Copper Antitrust Litigation*, 436 F.3d 782 (7th Cir. 2006), *American Pipe* does not apply when the class claim and subsequent individual claim turn on the same factual allegations but advance different legal theories. *Id*. at 794 (holding that a class suit in state court alleging violations of state antitrust law did not toll the limitations period for a later-filed suit for violations of federal antitrust law based on the same alleged misconduct); *see also Sawyer*, 642 F.3d at 562 ("[T]he point of [*Copper Antitrust*] … was not that a change of forum was dispositive; it was that state and federal antitrust laws differ."); *Williams v. Boeing Co.*, 517 F.3d 1120, 1135-36 (9th Cir. 2008) (holding that *American Pipe* did not apply because the class suit alleged that the defendant violated 42 U.S.C. § 1981 with discriminatory failures to promote and by allowing a hostile work environment, while the later individual suit alleged that the defendant violated § 1981 by compensating black workers differently); *Spann v. Cmty. Bank of N. Va.*, 2004 WL 691785, at *5-6 (N.D. Ill. Mar. 30, 2004) (holding that the statute of limitations on an individual claim under the federal Truth in Lending Act was not tolled by a class complaint that alleged violations of state law); *Stutz v. Minn. Mining Mfg. Co.*, 947 F. Supp. 399, 404 n.2 (S.D. Ind. 1996) ("For

---

[*] Other decisions hold that *American Pipe* tolling is irrelevant and that it is more appropriate to analyze the severed *Tinoco* suits under Rule 15(c)(1)(B). *See, e.g.*, *Ballard v. Ill. Bell Tel. Co.*, 2015 WL 6407574, at *3 & n.1 (N.D. Ill. Oct. 21, 2015). Both Balmes and Illinois Bell agree that *American Pipe* tolling is the correct framework for analyzing this suit, so the court need not address Rule 15(c)(1)(B) here. For the undersigned's analysis of the Rule 15(c)(1)(B) issue, see *Scott v. Ill. Bell Tel. Co.*, 2016 WL 910507 (N.D. Ill. Mar. 10, 2016).

the legal fiction of tolling to be equitable to the defendant, the claims in both the class action and the individual action must be identical.").

Balmes points out that the *Blakes* complaint put Illinois Bell on notice that it was being sued "for unpaid wages dating back to January 17, 2008." Doc. 31 at 9. But notice to the defendant is not enough to trigger *American Pipe*; otherwise, the doctrine would apply to claims dealing with identical facts but different legal theories or vice versa, which *Copper Antitrust*, *Williams*, and the other above-cited cases disprove. Instead, *American Pipe* tolling exists to prevent "needless duplication" of litigation. *American Pipe*, 414 U.S. at 554. If an absent class member stands to recover in a putative class action but worries that her individual claim will be time-barred if the court eventually decides not to certify a class or to decertify a certified class, she might file an individual suit just to cover her bases. *American Pipe* tolling allays that worry, and therefore dissuades absent class members from filing protective suits. *See Chardon v. Fumero Soto*, 462 U.S. 650, 659 (1983); *American Pipe*, 414 U.S. at 553-54. To have that effect, though, *American Pipe* need only apply to *identical* causes of action. As the Eighth Circuit recently explained:

> A broader rule would not enhance the "efficiency and economy" of Rule 23 class actions. The Supreme Court's concern was that without tolling, putative class members would needlessly bring motions to intervene or a multiplicity of actions raising identical claims. But where a putative class member wishes to pursue a claim *that is outside the scope of the class action*, his separate timely lawsuit is not "needless," because the class action would not prosecute his different claim.

*Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015) (emphasis added, citations omitted).

That is exactly what happened here. The lead plaintiffs in *Blakes* sued for pay for the time they spent guarding manholes during lunch, travelling between job sites during lunch, and filling out timesheets after shifts—the *Blakes* claims. If Balmes wanted to recover only for the

*Blakes* claims, it would have been a waste for him to file an individual suit while the *Blakes* collective action was pending, and so it makes sense that the collective action tolled the statute of limitations for those specific claims. But Balmes also wants to recover for non-*Blakes* claims—time he spent preparing for work before his shifts, and time he spent doing work during lunch other than guarding manholes and driving between jobs. He could not reasonably have expected for the *Blakes* collective action to provide recovery for those claims, so it would *not* have been a waste for him to file an individual suit stating those claims. *American Pipe* tolling is therefore inappropriate for the non-*Blakes* claims.

In fairness, Balmes's contrary position has support in decisions of the Second and Ninth Circuits. *See Cullen v. Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987) (holding that *American Pipe* tolling, much like relation back under Rule 15(c), applies whenever the later-filed claims "involve the same evidence, memories, and witnesses as were involved in the initial putative class action," regardless of "the differences between the legal theories advanced" in the two actions), *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled."); *see also In re Cmty. Bank of N. Va.*, 622 F.3d 275, 299-300 (3d Cir. 2010) (describing the circuit split and collecting cases); *but see Zarecor*, 801 F.3d at 888 (8th Cir. 2015) (rejecting the contention that "*American Pipe* tolling should apply because the [individual claims], although different causes of action, were based on the same factual information that underlay the class action complaint"); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003) ("As we explained …, however, a wrongful death action under Florida law is different in kind from any action based on a defective

product.  Because of this difference, a class action asserting primarily product liability claims would not include wrongful death claims unless wrongful death claims were explicitly included in the class action.").  But this court follows the dictates of the Seventh Circuit in *Copper Antitrust* and *Sawyer*, not of the Second or the Ninth.  *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) ("A district court in Wisconsin must follow [the Seventh Circuit's] decisions, but it owes no more than respectful consideration to the views of other circuits.").

## II.  The IMWL Claims

A similar analysis applies to Balmes's IMWL claims.  Three putative class IMWL claims were pending in *Blakes* between January 17, 2011, when the original complaint was filed, and June 23, 2011, when the *Blakes* plaintiffs voluntarily withdrew their class claims that Illinois Bell violated the IMWL by forcing workers: (1) to guard job sites during lunch; (2) to travel during lunch; and (3) to report their time after their shifts.  Doc. 21 at ¶ 13; Complaint, *Blakes*, 11 C 336 (Doc. 1).  Illinois Bell concedes that the limitations periods for Balmes's IMWL claims based on those allegations were tolled under *American Pipe* during that time.  Doc. 38 at 12 n.9. (Illinois Bell does state that Balmes has "at most, six potential weeks of additional IMWL claims based on what was pled in *Blakes*." *Ibid.*  That is incorrect.  January 17 through June 23, a period of 158 days, is more like five months than six weeks.)  And while Balmes argues that *all* of his IMWL claims were tolled during that period, Doc. 31 at 11, that argument fails for the same reason the parallel argument about his FLSA claims fails.  The statute of limitations governing Balmes's IMWL claims was tolled from January 17, 2011 until June 23, 2011, but only to the extent that the claims were based on the same allegations as the IMWL claims in *Blakes*.  So Balmes's *Blakes* claims under the IMWL are dismissed to the extent they are based

on work performed before September 23, 2010, which is three years and 158 days before the *Tinoco* suit was filed.

### III.    The IWPCA Claims

Unlike the IMWL and the FLSA, which require employers to pay employees a minimum wage and to pay time and a half for overtime work no matter what, the IWPCA requires only that employers pay their employees whatever they agreed to pay them. *See DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510896, at *6 (N.D. Ill. Aug. 10, 2011). The IWPCA states that "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period," 820 ILCS 115/3, and it defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties," 820 ILCS 115/2. Balmes alleges that Illinois Bell violated the IWPCA by reneging on an agreement to pay him time and a half for overtime work. He cites four documents as evidence of the agreement: the two collective bargaining agreements between Balmes's union and Illinois Bell, the Code of Business Conduct, and the Reporting Time Worked document. Doc. 31 at 12-15.

As noted, the Code of Business Conduct states that "all overtime hours worked by nonexempt employees must be paid regardless of whether they were approved," Doc. 28-1 at 40, and the Reporting Time Worked document states that "[n]on-exempt employees are eligible for overtime pay for all hours actually worked in excess of 40 hours in a workweek" and that "[n]on-exempt employees must be paid properly for all time worked," *id*. at 42. Illinois Bell argues that, as a matter of law, those documents cannot establish an agreement between Balmes and Illinois Bell for purposes of the IWPCA.

Illinois Bell first points out that the Code of Business Conduct contains a disclaimer stating (in all capital letters) that "the Code of Business Conduct is not a contract of employment and does not create contractual rights of any kind between AT&T and its employees." Doc. 28 at 14; Doc. 28-1 at 39. But an "employment agreement [within the meaning of the IWPCA] need not be a formally negotiated contract"; it is "broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons." *Landers-Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1059 (Ill. App. 2005) (quoting *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. 2004)); *see also Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012) ("Illinois courts have explained that an agreement under the IWPCA is broader than a contract.") (internal quotation marks omitted); *Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 834 N.E.2d 966, 972 (Ill. App. 2005) ("Although a plaintiff must prove the existence of a valid and enforceable contract in order to recover under a common law action for breach of contract, the same cannot be said in an action under the Wage Payment Act."). The disclaimer establishes only that the Code of Business Conduct does not create a *contract*; it is still possible, viewing all facts in the light most favorable to Balmes, that the Code represents an *agreement* between Balmes and Illinois Bell for purposes of the IWPCA. *See Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 659 (N.D. Ill. 2012) ("The disclaimers' statements that the handbooks do not create a 'contract' therefore say nothing, by themselves, about whether the handbooks create an agreement.").

The disclaimer here is unlike the broader disclaimers in *Brand v. Comcast Corp.*, 2013 WL 1499008 (N.D. Ill. Apr. 11, 2013), and *Martino v. MCI Communications Services, Inc.*, 2008 WL 4976213 (N.D. Ill. Nov. 20, 2008), which stated not only that the handbooks did not create contracts, but also that the employers did not assent to be bound in any way by statements in the

handbooks. *See Brand*, 2013 WL 1499008, at *5 ("The individual provisions of the Employee Handbook are simply guidelines, and Comcast reserves sole discretion to interpret them and resolve any conflict between or among policies.") (alteration omitted); *Martino*, 2008 WL 4976213, at *6 ("The Compensation Plan, including all related materials and documentation, is neither a contract *nor a guarantee of employment or compensation of any kind*.") (emphasis added). And while the disclaimer here is very similar to the one that *Harris v. Seyfarth Shaw LLP*, 2010 WL 3701322, at *2 (N.D. Ill. Sept. 9, 2010), held prevented a handbook from creating an agreement under the IWPCA, the undersigned is not bound by that decision and respectfully disagrees with its reasoning.

Illinois Bell next argues that the Code of Conduct and the Reporting Time Worked document are not agreements under the IWPCA because they state only that Illinois Bell will pay time and a half for overtime, which the IMWL and the FLSA already require it to do. Doc. 28 at 14-16. Again, though, that argument confuses agreements with contracts. Contracts require consideration, which usually means that parties cannot contract to do things that they already were required to do. *See Contempo Design, Inc. v. Chi. and Ne. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 550 (7th Cir. 2000) (en banc) ("The pre-existing duty rule states that promising to perform a duty that already is owed under an existing contract is not consideration, and, thus, a modification to the contract is unenforceable."); *Johnson v. Maki & Assocs., Inc.*, 682 N.E.2d 1196, 1199 (Ill. App. 1997). But an agreement under the IWPCA is only "a manifestation of mutual assent," and nothing prevents an employer and an employee from mutually assenting to follow the law. *See Wharton*, 912 F. Supp. 2d at 660-61 (rejecting an employer's argument that, because a handbook promised only that the employer "w[ould] comply with existing employment law," it could not be an employment agreement under the IWPCA).

Illinois Bell finds more success arguing that it is inappropriate for Balmes to rely on the collective bargaining agreements for purposes of his IWPCA claims. Section 301 of the Labor Management Relations Act ("LMRA") provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). As interpreted by the Supreme Court, the provision does more than authorize federal courts to hear labor disputes; it also completely preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (internal quotation marks omitted); *see also Nelson v. Stewart*, 422 F.3d 463, 467-69 (7th Cir. 2005); *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285-86 (7th Cir. 2001) (en banc). Preemption under § 301 "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797.

"[T]o determine whether a purported state-law claim 'really' arises under Section 301, a federal court must look beyond the face of plaintiff's allegations and the labels used to describe her claims and … evaluate the *substance* of plaintiff's claims." *Id*. at 800 (internal quotation marks omitted). "[A] state-law claim is 'completely preempted' only when it is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" *Ibid*. (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). Put another way, § 301 preempts any state law claim whose resolution "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) (footnote omitted); *see also Crosby*,

725 F.3d at 800 ("[O]nly those state-law claims that require 'interpretation' of a CBA are inevitably federal."); *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000) (holding that § 301 preempted a tortious interference claim because the claim required the plaintiff to prove that his employer breached a collective bargaining agreement).

Section 301 preemption is not boundless. A state law claim is not preempted simply because it "require[s] reference to" a collective bargaining agreement. *Bentz*, 253 F.3d at 285. Thus, "the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994). Moreover, even a state law claim that turns on the meaning of a collective bargaining agreement will escape preemption "when the particular contractual provision is so clear as to preclude all possible dispute over its meaning … [or] if the parties do not dispute the interpretation of the relevant … provisions." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008) (internal quotation marks, brackets, and citations omitted) (discussing the Railway Labor Act, 45 U.S.C. § 151 *et seq.*); *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994) (describing the RLA preemption standard as "virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA"). Thus, a state law claim is not completely preempted under circumstances where a defendant contending that the claim requires interpretation of a collective bargaining agreement advances a frivolous or insubstantial reading of the agreement; preemption applies only where the parties' respective interpretations of the agreement are arguable or plausible. *See Baker v. Kingsley*, 387 F.3d 649, 659 (7th Cir. 2004) ("Because defendants' interpretation is plausible, and demonstrates a genuine dispute between the parties that can affect liability, it is a sufficient basis for preemption.").

Balmes's IWPCA claims will not *require* interpretation of the collective bargaining agreements—as explained above, Balmes can rely entirely on the Code of Business Conduct and the Reporting Time Worked document to prove that Illinois Bell broke an employment agreement—so the claims are not preempted. That said, Balmes may not rely on the collective bargaining agreements to prove that Illinois Bell owed him "wages" under the IWPCA. Both collective bargaining agreements state that "[e]mployees shall be paid at the overtime rate of one and one-half … times their basic hourly wage rate including applicable differentials for work performed … in excess of forty (40) hours in a week." Doc. 28-1 at 3, 27. So, to the extent that the IWPCA claims rely on the collective bargaining agreements, the court would have to determine whether the work-related tasks that Balmes performed outside of normal hours count as "work" under the agreements. That question mirrors the question whether those tasks count as "work" under the FLSA and the IMWL, and it likely will be just as fiercely disputed. *See Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 844 (7th Cir. 2014) (holding that time spent donning and doffing mandatory protective gear was not compensable work under the FLSA or the IMWL). Accordingly, if Balmes continues to try to root his IWPCA claims in the collective bargaining agreements, the claims will be preempted; but they will not be preempted if he relies solely on the Code of Business Conduct and the Reporting Time Worked document. *Cf. Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1066-67 (9th Cir. 2000) (holding that a suit under California's overtime laws was completely preempted because it would have required the court to determine "whether the plaintiffs were receiving a 'premium wage rate' for overtime under the collective bargaining agreement," which would have exempted them from the state overtime law).

**Conclusion**

Illinois Bell's partial motion to dismiss is granted in part and denied in part. Balmes's non-*Blakes* claims under the FLSA and the IMWL—meaning claims pertaining to work that did *not* consist of guarding job sites or travelling between job sites during lunch—are dismissed with prejudice to the extent they are based on work performed before February 28, 2011. Balmes's *Blakes* claims under the IMWL were tolled only between January 17, 2011 and June 23, 2011—a period of 158 days—so they are dismissed to the extent they are based on work performed before September 23, 2010, which is three years and 158 days before the *Tinoco* suit was filed. Balmes's IWCPA claims are not dismissed, but he may not rely on the collective bargaining agreements to prove them.

March 15, 2016

_____

United States District Judge